1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACYE B. WASHINGTON,<br><br>            Plaintiff,<br><br>     v.<br><br>J. SERRATO, et al.,<br><br>            Defendants. | Case No. 22-cv-05832 BLF (PR)<br><br>**ORDER DENYING IN PART AND GRANTING IN PART MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART MOTION FOR LEAVE TO FILE SUR-REPLY REFERRING CASE TO SETTLEMENT PROCEEDINGS; STAYING CASE; INSTRUCTIONS TO CLERK**<br><br>(Docket Nos. 21, 47) |

      Plaintiff, a California inmate, filed the instant *pro se* civil rights complaint under 42 U.S.C. § 1983 against prison staff at Salinas Valley State Prison ("SVSP"), where he was formerly housed. Dkt. No. 1-1. The Court ordered the matter to proceed on the cognizable claims of excessive force and conspiracy to commit assault against Defendants Officers J. Serrato, E, Guijarro, B. Akins, and C. Diaz. Dkt. No. 9.

      Defendants filed a motion for summary judgment, supported by declarations and exhibits, asserting that they used appropriate force to gain compliance with lawful orders, that there was no conspiracy to commit assault on Plaintiff, Plaintiff failed to exhaust administrative remedies for claims against Defendant Guijarro, and they are entitled to

qualified immunity.  Dkt. No. 21.[1]  Plaintiff filed several opposition papers.  Dkt. Nos. 32, 33, 36, 39, 40, 43.[2]  Defendants filed a reply along with additional evidence.  Dkt. No. 45.[3]

Plaintiff filed a motion to file a sur-reply, objecting to Defendants' reply.  Dkt. No. 47.  Defendants oppose this sur-reply, asserting that it contains "further argument on the motion" which is not permitted under the Local Rules and therefore should be stricken.  Dkt. No. 48.  Defendants request that if the court considers these further arguments, they be given leave to respond.  *Id.* at 2.

Northern District Local Rule 7-3(d)(1) provides: "If new evidence has been submitted in the reply, the opposing party may file and serve an Objection to Reply Evidence… stating its objections to the new evidence, which may not include further argument on the motion."  Civ. L.R. 7-3(d)(1).  Plaintiff has a right to object to the new

---

[1] In support of the motion, Defendants submit declarations from the following: (1) Defendant Correctional Sgt. B. Akins with exhibits containing photos and a report of his injuries, Dkt. No. 21-1; (2) Defendant Correctional Officer A. Serrato with exhibits containing photos and a report of his injuries, Dkt. No. 21-2; (3) Defendant Correctional Officer E. Guijarro with exhibits containing photos and a report of his injuries, Dkt. No. 21-3; (4) Defendant Correctional Officer C. Diaz, Dkt. No. 21-4; (5) Officer R. Salgado with exhibits containing photos, Dkt. No. 21-5; (6) Officer B. Parker, Dkt. No. 21-6; and (7) Grievance Coordinator C. Ramos, Dkt. No. 21-7.  The Court notes that although the Ramos Declaration refers to an "Exhibit A," this attachment is missing from the filing.  Defendants submit this missing exhibit with their reply.  *See* Dkt. No. 45-2, *see infra* fn. 3.  Furthermore, Defendants refer to a declaration filed by "Rios" throughout their factual summary, but no such declaration is among their papers.  *See* Dkt. No. 21 at 25.

The Court notes that the photos submitted with the declarations are duplicative.  Therefore, when the Court refers to photo evidence in this order, it will be to the photos filed with Defendant Akins' declaration.

[2] Plaintiff's opposition papers include the following: (1) opposition to Defendants' motion based on exhaustion, Dkt. No. 32; (2) opposition addressing merits and qualified immunity, Dkt. No. 33; (3) medical records in support of opposition, Dkt. No. 36; (4) opposing to Defendant Guijarro's declaration, Dkt. No. 39; (5) opposition to Defendant Diaz's declaration, Dkt. No. 39-1; (6) opposition to Defendant Akins' declaration, Dkt. No. 39-2; (7) opposition to Defendant Serrato's declaration, Dkt. No. 40; and (8) supplemental exhibits in support, Dkt. No. 43.

[3] In support of their reply, Defendants submit declarations from the following: (1) Defendants' counsel Deputy Attorney General William P. Buranich, with an exhibit containing the declaration of Armory Sgt. A. Villalobos, Dkt. No. 45-1; and (2) Grievance Coordinator C. Ramos with an exhibit containing a copy of the grievance filed by Plaintiff in connection with the underlying incident and appeal decision, Dkt. No. 45-2.

1  evidence submitted by Defendants with their reply, but any further arguments on the

2  motion are not permitted.  Accordingly, the motion for leave to file a sur-reply is

3  GRANTED in part.  The Court will only consider Plaintiff's objections to Defendants'

4  reply evidence and will strike the remainder.  Accordingly, it is not necessary to grant

5  Defendants leave to file a further response.  The Court also notes that Defendants'

6  response to the sur-reply already contains their counterarguments.

7       For the reasons discussed below, Defendants' summary judgment motion is

8  **GRANTED in part and DENIED in part**.

9

10                              **DISCUSSION**

11  **I.   Statement of Facts**

12       The underlying events of this action took place at SVSP on June 19, 2022.  The

13  parties dispute how and why the incident occurred.  Plaintiff claims Defendants conspired

14  to assault him based on false allegations that he was attacking them with weapons, which

15  he denies.  Defendants assert that they were responding to Plaintiff's request for help and

16  then used appropriate force to gain compliance with lawful orders when he began attacking

17  them with weapons.  The following facts are undisputed unless otherwise indicated.

18       According to Plaintiff, he was in his cell while other inmates had exited for "noon

19  medication-line" at about 12:30 pm.  Dkt. No. 33 at 2.  At that time, Defendants Serrato

20  and Diaz were the unit floor officers and came to Plaintiff's cell.  *Id.*  Defendant Serrato

21  asked, "What's up, Washington?"  *Id.*  Plaintiff responded, "You know what's up, you

22  need to stop messing with me, stop messing with my food" and proceeded to list off his

23  complaints against Defendant Serrato for hitting his cell door, whistling, and messing with

24  his plumbing.  *Id.*  Defendant Serrato then asked, "What, are you feeling ill, do you need

25  medical attention?"  *Id.*  Plaintiff responded to what he believed was Defendant Serrato's

26  sarcastic remark by saying, "Yes."  *Id.* at 3.  Defendants then walked away, and Plaintiff

27  turned off his cell light and wheeled to the back of the cell to watch his television.  *Id.*

28                                  3

United States District Court
Northern District of California

According to Defendants, Plaintiff informed Defendant Serrato that he was experiencing chest pains and shortness of breath.  Serrato Decl. ¶ 2.  Defendant Serrato sent out a Code 1 alert for medical emergency through his institutional radio.  *Id.*  Defendants Akins, Guijarro, Diaz, and nonparty Officer Barker were among those who responded to the alarm during the course of the incident.  Akins Decl. ¶ 2; Guijarro Decl. ¶ 2; Diaz Decl. ¶ 2; Barker Decl. ¶ 2.

Defendant Akins arrived first in response to the alarm and was informed by Defendant Serrato that Plaintiff was complaining that he could not breathe.  Akins Decl. ¶ 2.  Defendant Akins could also hear Plaintiff yelling from inside the cell, "I can't breathe, come help me!"  *Id.*

According to Plaintiff, he did not request medical help.  Dkt. No. 33 at 3, 10.  He merely noticed Defendant Serrato and several other officers standing in front of his cell door a few minutes after his earlier interaction with Defendants Serrato and Diaz.  *Id.* at 3.

Defendants Akins and Serrato ordered the control booth officer, a nonparty Officer Rios, to open Plaintiff's cell door.  Akins Decl. ¶ 3; Serrato Decl. ¶ 3.  By this time, Defendants Diaz and Guijarro arrived at the cell in response to the alarm.  Akins Decl. ¶ 3; Guijarro Decl. ¶ 2; Diaz Decl. ¶ 3.  Defendants shone their flashlight into the dark cell as the lights were off.  Akins Decl. ¶ 3; Serrato Decl. ¶ 3; Guijarro Decl. ¶ 2.  According to Defendants, Plaintiff continued to request help, saying "Come in here and help me! I can't breathe!"  Akins Decl. ¶ 3; Serrato Decl. ¶ 3.  Defendants could see Plaintiff seated in his wheelchair inside his cell.  Akins Decl. ¶ 4; Serrato Decl. ¶ 3.

According to Defendants, they saw Plaintiff reach for an unknown object in his wheelchair.  Akins Decl. ¶ 4; Serrato Decl ¶ 3; Guijarro Decl. ¶ 2.  Defendant Serrato heard Plaintiff yell, "Come in motherfucker I'm going to kill you!"  Serrato Decl. ¶ 3.  When Defendants gave Plaintiff loud verbal orders to drop the weapon and submit to handcuffs, Plaintiff refused to comply.  Akins Decl. ¶ 4; Serrato Decl. ¶ 4; Guijarro Decl. ¶ 3; Diaz Decl. ¶ 4.  Rather, he threw a metal wheelchair footrest towards the cell door

4

where Defendants were standing, striking Defendant Serrato in the left knee.  Akins Decl. ¶¶ 4, 16, Ex. A; Serrato Decl. ¶¶ 4, 17, Ex. E; Guijarro Decl. ¶ 3; Diaz Decl. ¶ 5.  Plaintiff then reached for another object, which was part of another wheelchair footrest.  Akins Decl. ¶ 4; Serrato Decl. ¶ 5; Guijarro Decl. ¶ 4.  Defendants gave Plaintiff loud verbal commands to drop the object, but he refused.  Akins Decl. ¶ 5; Diaz Decl. ¶ 6.

According to Defendants, at that point, Defendants Serrato, Guijarro, and Akins simultaneously deployed each of their pepper spray streamers, striking Plaintiff in the face and upper torso.  Akins Decl. ¶ 6; Serrato Decl. ¶ 5; Guijarro Decl. ¶ 4; Diaz Decl. ¶ 6. The streamers had no effect on Plaintiff, who threw the second metal object at the officers, this time missing them.  Akins Decl. ¶¶ 7, 16, Ex. A; Serrato Decl. ¶ 5; Guijarro Decl. ¶ 5. Plaintiff was again given clear verbal orders to submit to handcuffs, and again he refused, reaching for a third object, another part of a metal footrest.  Akins Decl. ¶¶ 7, 16, Ex. A; Serrato Decl. ¶ 6; Guijarro Decl. ¶ 5.

According to Plaintiff, the door to his cell was opened at the same time that Defendant Akins gave the order to "Turn on your lights."  Dkt. No. 33 at 10.  Because the light switch is located near the cell door, Plaintiff states he did not have an opportunity to turn on the lights as he was at the back of the cell.  *Id.*  Plaintiff also heard Defendant Serrato yelling, "Put the weapon down, Get on down," and then start spraying Plaintiff with pepper-spray.  Dkt. No. 33 at 3.  Plaintiff states that the spraying "began simultaneously as someone was shining a beam from a flashlight into the cell directly in Plaintiff's face."  *Id.* at 7.  Plaintiff states that "[n]o Defendant ever warned [him] that he would be pepper-sprayed or subjected to the use of force."  *Id.* at 11.  Plaintiff states the spray was continuous for at least twenty to thirty seconds, and that he remained unmoving in his wheelchair, eyes tightly shut.  *Id.* at 3.  Plaintiff denies using the wheelchair parts as weapons and throwing them at Defendants.  *Id.* at 12.  Plaintiff states that his wheelchair is designed with detachable partes for "comfort, convenience, maneuverability and storage."  *Id.*  Plaintiff leaves the wheelchair legs unattached while in the cell due to the lack of space

and so he can navigate with his right foot; he leaves the parts next to the cell door near the toilet. *Id.* at 8. He states that the legs were out of his reach at the time of the incident, since he was at the back of the cell, approximately 10 feet away. *Id.* at 9.

Having emptied their chemical streamers, Defendants Akins and Serrato then used physical force to obtain compliance with lawful orders, disarm an attacked, and effect custody. Akins Decl. ¶ 8; Serrato Decl. ¶ 6**; ¶**; Guijarro Decl. ¶ 6. Defendant Serrato grabbed Plaintiff's left arm, causing him to drop the third object, while Defendant Akins grabbed his right arm. Akins Decl. ¶ 8; Serrato Decl. ¶ 6. However, because Defendant Akins' hands were slippery, Plaintiff managed to pull his arm away and strike Defendant Serrato on the left side of his face. Akins Decl. ¶ 8; Serrato Decl. 6. While Plaintiff was attempting to pull his fist back to strike again, Defendant Akins again attempted to secure Plaintiff's right arm, but in the struggle, he felt a popping in his wrist and pain; Defendant Akins was still able to maintain control of Plaintiff's hand. Akins Decl. ¶ 9, Exs. E, F. Plaintiff then began kicking his legs, striking Defendant Akins in the left knee. Akins Decl. ¶ 9. Defendant Akins maintained his hold, and along with Defendant Serrato, pulled Plaintiff to a prone position on the cell floor. Akins Decl. ¶ 9; Serrato Decl. ¶ 7; Guijarro Decl. ¶ 6.

According to Plaintiff, Defendant Guijarro struck Plaintiff's left rib cage with his knee as he pulled Plaintiff out of his wheelchair. Dkt. No. 33 at 4.

According to Defendants, Plaintiff continued to resist by thrashing his body from side to side. Akins Decl. ¶ 10; Serrato Decl. ¶ 7. Defendant Akins repeated his verbal order to stop resisting, but Plaintiff refused. Akins Decl. ¶ 10. Defendants Akins and Serrato brought Plaintiff's arms behind his back while Defendant Guijarro held Plaintiff down to stop him from thrashing about. Akins Decl. ¶ 10; Serrato Decl. ¶ 8; Guijarro Decl. ¶ 6; Dkt. No. 33 at 4. Defendant Serrato was then able to place handcuffs on Plaintiff. Akins Decl. ¶ 10; Serrato Decl. ¶ 8; Dkt. No. 33 at 4. Once cuffed, Plaintiff became compliant and all use of force ceased. Akins Decl. ¶ 10; Serrato Decl. ¶ 9;

1    Guijarro Decl. ¶ 7.

2        Defendants Akins, Serrato, and Guijarro then removed Plaintiff from the

3    contaminated cell and placed him in a seated position on the floor outside the cell.  Dkt.

4    No. 33 at 3; Akins Decl. ¶ 11; Serrato Decl. ¶ 9; Guijarro Decl. ¶ 8; Diaz Decl. ¶ 7.

5    Defendant Akins notified Central Control via the radio of a "Code 1, Battery on Staff."

6    Akins Decl. ¶ 11.  Defendant Serrato conducted a clothed body search of Plaintiff, and

7    after finding no contraband, transitioned Plaintiff from handcuffs to waist restraints.  Akins

8    Decl. ¶ 12; Serrato Decl. ¶ 10.  Officer Parker responded to Defendant Akins' Code 1

9    alarm and arrived to observe Plaintiff in a seated position on the floor outside his cell in

10   waist restraints.  Parker Decl. ¶ 2.  When a clean wheelchair was brought, Defendants

11   Akins, Serrato, and Guijarro assisted Plaintiff onto it.  Akins Decl. ¶¶ 12, 17, Ex. B;

12   Serrato Decl. ¶ 10; Guijarro Decl. ¶ 8; Parker Decl. ¶ 3.  Medical staff then arrived in

13   response to Defendant Serrato's original alarm.  Akins Decl. ¶ 12.  Defendant Salgado also

14   arrived to process the scene and collect evidence, including photographing the wheelchair

15   parts on the ground, Plaintiff sitting in the wheelchair outside the cell, and the injuries

16   sustained by Defendants Akins and Serrato.  Serrato Decl. ¶ 10; Salgado Decl. ¶¶ 2, 4, 5, 8;

17   Parker Decl. ¶ 4.

18       According to Plaintiff, he began to feel disoriented and dizzy while in the chair, and

19   "was soon thereafter laying on the concrete floor," the wheelchair having tipped forward

20   and causing him to fall and land on his shoulder.  Dkt. No. 33 at 5.

21       According to Defendants, while medical staff was tending to him, Plaintiff threw

22   himself out of the wheelchair onto the floor.  Akins Decl. ¶ 13, 17, 18, Exs. B, C; Serrato

23   Decl. ¶ 11; Guijarro Decl. ¶ 10; Diaz Decl. ¶ 8; Parker Decl. ¶ 5; Salgado Decl. ¶¶ 5-6,

24   Exs. A, B.  Officer Parker heard Plaintiff yelling, "Ah my neck and back!"  Parker Decl. ¶

25   5.  Plaintiff also began shouting that he was doing this for Juneteenth and for his "people."

26   Akins Decl. ¶ 13; Serrato Decl. ¶ 11; Guijarro Decl. ¶ 10; Diaz Decl. ¶ 8; Parker Decl. ¶ 6.

27       Medical staff transitioned Plaintiff from the ground to a gurney and transported him

28

to the prison's treatment center for evaluation.  Akins Decl. ¶¶ 14, 19, Ex. D; Serrato Decl. ¶ 12; Guijarro Decl. ¶ 11; Diaz Decl. ¶ 9; Parker Decl. ¶ 7; Salgado Decl. ¶ 7.  Defendants Akins, Serrato, and Guijarro were examined by medical personnel and treated for their injuries.  Akins Decl. ¶¶ 14, 20, 21, Exs. E, F; Serrato Decl. ¶¶ 17, 18, Exs. E, F; Guijarro Decl. ¶ 16, Ex. E.  Plaintiff was later taken to an outside hospital for treatment for his injuries, which included a broken left rib.  Dkt. No. 33 at 5-6.

The next day, Plaintiff filed a grievance regarding the use of force incident on June 19, 2022.  Ramos Decl. ¶ 7; Dkt. No. 45-2, *see supra* fn. 1, 3.

## II.  **Summary Judgment**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  If the evidence in opposition

to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id*. (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001). The court's obligation to view evidence in the light most favorable to the

non-movant does not require it to ignore undisputed evidence produced by the movant. *L.F. v. Lake Washington School District*, 947 F.3d 621, 625 (9th Cir. 2020).

Courts "may not simply accept what may be self-serving account by the police officer," especially in light of contrary evidence. *Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *see id.* (finding summary judgment inappropriate when officer's testimony that a knife-wielding suspect was trying to get up after being shot at 18 times, with 9 of those shots at close range while the suspect was lying on the ground, was contradicted by the video which did not show the suspect trying to get up). "When opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-83 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits plaintiff's claim that there was little or no actual threat to innocent bystanders); *see Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) (in ERISA case where the issue was whether plaintiff had actual knowledge of an alleged fiduciary breach, the court indicated that plaintiff's denial of knowledge could be discredited at summary judgment stage if it was blatantly contradicted by electronic records showing plaintiff viewed a website containing relevant disclosures of investment decisions); *cf. Hughes v. Rodriguez*, 31 F.4th 1211, 1219 (9th Cir. 2022) (district court erred in disregarding all of plaintiff's testimony where bodycam footage of arrest blatantly contradicted some but not all of the testimony; video did not depict whether plaintiff was punched <u>after</u> he was handcuffed, and panel majority found audio of the arrest was also unclear as to the sequence).

### A.     <u>Excessive Force</u>

A prisoner has the right to be free from cruel and unusual punishment, including

United States District Court
Northern District of California

physical abuse by guards.  Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial determination is whether force was applied in a good-faith effort to maintain or restore discipline, or was applied maliciously and sadistically to cause harm.  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 317 (1986)).  In making this determination, a court may evaluate the need for application of force; the relationship between that need and the amount of force used; the extent of any injury inflicted; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response.  *See Hudson*, 503 U.S. at 7; *see also Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation).

Defendants assert that there is no evidence that they acted "maliciously and sadistically for the very purpose of causing harm" during the June 19, 2022 incident.  Dkt. No. 21 at 8.  Defendants assert that Plaintiff led them to believe that he was ill and sought to entice them into his cell in order to ambush them with weaponized pieces of his wheelchair.  *Id.*  Defendants assert that given the surprise nature of the attack, they acted in haste and under pressure, but nevertheless followed the proper protocol by first giving verbal commands to restore order.  *Id.*  Defendants assert that they used pepper spray when those orders went unheeded and Plaintiff continued his attack.  *Id.*  When the pepper spray had no effect, only then did Defendants employ physical force, and only as much necessary, stopping immediately when Plaintiff submitted to custody.  *Id.*  Defendants assert that Plaintiff actively resisted their efforts, punching Defendant Serrato in the face and kicking Defendant Akins in the knee, and as such, the threat to the safety of officers was real and apparent.  *Id.*  Defendants assert that they acted in a good faith effort to restore discipline, and that the evidence does not support a reliable inference of wantonness.  *Id.*

In opposition, Plaintiff denies that he threw anything at Defendants.  Dkt. No. 33 at 7.  He asserts that he always takes the wheelchair parts off while in his cell due to limited

space, and that the parts were out of his reach at the time of the incident.  *Id.* at 8.  He also asserts that it was impossible for the wheelchair parts to be thrown so far or to have caused such minor injury to Defendant Serrato if he had actually been struck by it.  *Id.* at 9.  He also asserts Defendants contrived the medical emergency as an excuse to enter his cell and use force.  *Id.* at 11.  Plaintiff asserts that he is the victim of a conspiracy to retaliate against him by Defendants for filing a grievance against them for a prior incident.  *Id.* at 12-13.  He attacks each Defendants' declaration and contrasts it with their initial reports of the incident.  *See* Dkt. Nos. 39, 39-1, 39-2, 40.  Plaintiff also asserts that the wheelchair parts could not have landed where they did if thrown as Defendants allege, Dkt. No. 39 at 9, and that the parts were moved after the incident by Defendant Guijarro.  Dkt. No. 39 at 4.

In reply, Defendants assert that Plaintiff has produced no admissible evidence in opposition, and that he merely takes issue with immaterial facts that have no bearing on their motion.  Dkt. No. 45 at 4.  Defendants assert that Plaintiff admits that he told Defendant Serrato that he wanted medical attention, and that the footrests from his wheelchair were detached.  *Id.*  Defendants assert Plaintiff fails to controvert the photographic evidence that the pieces ended up at a substantial distance from where he claims they originated.  *Id.*  Defendants assert that under *Scott v. Harris*, 550 U.S. 372 (2007), the Court should disregard Plaintiff's version of the facts when it was blatantly contradicted by the record, i.e., the photographic evidence.  *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there exist genuine disputes as to material facts relating to Plaintiff's claim of excessive force.  First, Defendants' assertion that the Court should disregard Plaintiff's version of events under *Scott* is not persuasive.  This action is distinguishable from *Scott* which involved irrefutable video evidence which utterly discredited plaintiff's version of events.  Here, the only evidence Defendants submit are mostly their own self-serving declarations and photographs, which do not clearly discredit Plaintiff's account.  Furthermore, the

photographs only show that the parts are detached from the wheelchair, which is not disputed.  The photographs cannot demonstrate how the parts came to be in their locations which is in dispute: Defendants assert Plaintiff threw them while Plaintiff claims Defendants planted them there after the incident.  The photographs of Defendants' injuries establish merely that they were injured, not the manner in which they received those injuries.  Nor can Officer Salgado, who took the photographs but was not present during the incident, testify regarding the circumstances.  Lastly, the only other non-party declaration submitted by Defendants is that of Officer Parker, who only arrived after the excessive force incident had already concluded.  *See supra* at 7.  Accordingly, the Court is not persuaded that Plaintiff's account is so blatantly contradicted by the record such that no reasonable jury could believe it under *Scott*, 550 U.S. at 380-83.  The Court may not make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  Rather, the Court must view the evidence in the light most favorable to Plaintiff, as well as the inferences to be drawn from the facts. *Id.* at 631.

Evaluating the *Hudson* factors based on Plaintiff's version of events indicates that force was applied maliciously and sadistically to cause harm.  The first *Hudson* factor involves the need for application of force.  According to Plaintiff's version of events, there was no need for the application of force as he was merely sitting in the back of his cell watching television when Defendants opened his cell door and immediately began pepper spraying him.  Furthermore, Plaintiff states that he was sitting in his wheelchair, not moving and with his eyes closed when Defendants subsequently grabbed and pulled him out of his wheelchair.  For the same reason, the amount of force used, *i.e.*, the spraying of *three* cannisters of pepper spray (whether it was for seven seconds or for thirty seconds)[4]

---

[4] Defendants assert in their reply that it takes seven seconds to empty a cannister of pepper spray, Dkt. No. 45 at 5, and Plaintiff asserts that Defendants could have taken turns administering their cannisters rather than simultaneously such that it could have been as long as 21 seconds, Dkt. No. 47 at 2.  Ultimately, this fact is immaterial since the use of

and the physical force used to pull Plaintiff out of his wheelchair onto the ground, in relation to the lack of aggression from Plaintiff also weighs in favor of the force being excessive.  Thirdly, there is no dispute over the injuries sustained by Plaintiff, which includes a fractured left rib.  Fourthly, according to Plaintiff's version of events, he presented no threat to Defendants as the alleged weapons were not within his reach and he was not moving after the pepper spray was deployed.  Lastly, Plaintiff states that no warnings were given before Defendants deployed the pepper spray and then used physical force.  Accordingly, based on Plaintiff's version of events, all five factors weigh in favor of the force being excessive.  *See Hudson*, 503 U.S. at 7.

Based on the foregoing, Defendants have failed to demonstrate the absence of a genuine issue of material fact and are not entitled to summary judgment on this claim.  *See Celotex Corp.*, 477 U.S. at 323.

### B.   Conspiracy to Commit Assault

Defendants assert that they responded to an alarm and had no time to plan a response to it.  Dkt. No. 21 at 8-9.  They responded to an unforeseen situation that they did not and could not have seen coming.  *Id.* at 9.  Defendants assert that none of them knew Plaintiff was planning an attack and none of them anticipated that they would need to use force.  *Id.*  Defendants assert that Plaintiff has offered no evidence, only allegations based on speculation, that they conspired to use force.  *Id.*

In opposition, Plaintiff asserts Defendants Serrato, Akins, Guijarro, and Diaz were all involved in an incident that occurred the month before involving a "fifteen minute confrontation about safety and security."  Dkt. No. 33 at 13.  Plaintiff claims Defendants "are a pact of rogue correctional officers who engage in collective acts of physical, psychological abuses on inmates…"  *Id.*  He also asserts that had there been a medical emergency, medical staff would have responded first, but that none arrived until after he

---

any amount of force under Plaintiff's version of events was excessive.

fell out of the wheelchair.  Furthermore, he points out that Officer Parker did not respond until Defendant Akins' Code 1 alarm, which indicates that there was no alarm sounded by Defendant Serrato at the beginning of the incident.  *Id.* at 14.  Plaintiff asserts that there is a "huge gap" in the chronology/narrative of defendants' story.  *Id.*

In reply, Defendants assert Plaintiff has produced nothing in the way of admissible evidence of a conspiracy.  Dkt. No. 45 at 4.  Defendants assert that the evidence shows that Defendant Diaz took no action against Plaintiff other than instructing him to "cuff up," and that she merely observed the actions of the other officers.  *Id.*

A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999).  To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or common design and understanding, or a meeting of the minds in an unlawful agreement.  *Id.*  To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.  *Id.*  A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.  *Id.* at 856-57.

Conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983.  *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc).  It does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation.  *Id.*  Conspiracy may, however, enlarge the pool of responsible defendants by demonstrating their causal connection to the violation; the fact of the conspiracy may make a party liable for the unconstitutional actions of the party with whom he has conspired.  *Id.*  Conspiracy in § 1983 actions is usually alleged by plaintiffs to draw in private parties who would otherwise not be susceptible to a § 1983 action because of the state action doctrine, or to aid in proving claims against otherwise tenuously connected

parties in a complex case.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there exists a genuine dispute of material fact as to whether Defendants were involved in a conspiracy to assault Plaintiff.  Plaintiff's account establishes that Defendants unjustifiably deployed pepper spray on him and then continued to use physical force when Plaintiff was not resisting.  The evidence indicates that Defendants Serrato, Akins, Guijarro, and Diaz were involved a concerted action to use unjustified force on Plaintiff to harm him which resulted in damage.  *See Gilbrook*, 177 F.3d at 856.  Defendants' knowledge of and participation in this conspiracy can be inferred from the circumstantial evidence, *i.e.*, that they were involved in this incident of excessive force, and from the undisputed evidence of each of their actions.  *Id.* at 856-57.  Specifically, Defendant Serrato made the allegedly false Code 1 alarm over the radio which summoned the other Defendants to Plaintiff's cell. Defendants Akins and Serrato then falsely accused Plaintiff of throwing weapons at them, and then along with Defendant Guijarro, all three deployed their pepper spray cannisters until empty.  Then while Plaintiff was immobile due to the pepper spray, they used physical force on him, which resulted in further injury.  The facts are also sufficient to raise the inference that Defendant Diaz was involved in this conspiracy because her account is consistent with the Defendants who used the alleged force and therefore indicates she shared in the common objective of the conspiracy.

Based on the foregoing, Defendants have failed to demonstrate the absence of a genuine issue of material fact and are not entitled to summary judgment on this claim.  *See Celotex Corp.*, 477 U.S. at 323.

### C.  <u>Qualified Immunity</u>

Defendants asserts that they are entitled to qualified immunity.  Dkt. No. 21 at 10.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v.*

United States District Court
Northern District of California

*Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

A right is clearly established if it were "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).  "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority." *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019).  If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Saucier*, 533 U.S. at 202.

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier*, 533 U.S. at 194); *Henry A.*, 678 F.3d at 1000 (qualified immunity analysis requiring (1) determining the contours of the clearly established right at the time of the challenged conduct and (2) examining whether a reasonable official would have understood that the challenged conduct violated such right).  The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances

of each case.  *See Pearson*, 555 U.S. at 236 (noting that while the *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory).  "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the non-movant.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).  For example, regarding the first prong, the threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  *Saucier*, 533 U.S. at 201.

Defendants' qualified immunity argument must be rejected because they do not present the facts in the light most favorable to Plaintiff as the nonmoving party.  *See Tolan*, 134 S. Ct. at 1866.  Defendants assert that they did not use excessive force but only as much force was necessary to gain compliance with lawful orders to disarm an attacker and effect custody.  Dkt. No. 21 at 11.  However, the facts viewed in his favor are that Plaintiff was not attacking Defendants, and that they unjustifiably used force on him without warning when he was not resisting.  As such, it simply cannot be said that Defendants had a "reasonable, but mistaken belief" that they could contrive to accuse Plaintiff of attacking them in order to use apply force maliciously and sadistically to cause harm.  *Saucier*, 533 U.S. at 202.  Accordingly, Defendants have not established that they are entitled to qualified immunity on the excessive force claim against them.

### D.    <u>Exhaustion of Administrative Remedies</u>

Lastly, Defendants assert that Plaintiff failed to exhaust his claims against Defendant Guijarro.  Dkt. No. 21 at 9-10.

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  An action

must be dismissed unless the prisoner exhausted available administrative remedies <u>before</u> he filed suit.  *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).  The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

Under the regulations effective June 1, 2020, there are two levels of review for non-health-care appeals by inmates, referred to as a grievance and an appeal.  At the first level, the inmate submits a form CDCR 602-1 to the Institutional Office of Grievances at the prison or other facility where he is housed.  *See id.* at § 3482(a), (c) (repealed eff. June 1, 2020).  "In response, a claimant shall receive a written decision" from the Institutional Office of Grievances "clearly explaining the reasoning for the Reviewing Authority's decision as to each claim."  *Id.* at § 3481(a) (repealed eff. June 1, 2020).  At the second level, an inmate dissatisfied with the Institutional Office of Grievances' decision at first level submits a form CDCR 602-2 to the CDCR's Office of Appeals in Sacramento.  *Id.* at §§ 3481(a), 3485(a) (repealed eff. June 1, 2020).  If a remedy is granted or approved but not provided, an inmate may use a form CDCR 602-3 to request prison officials to implement that remedy.  *Id.* at § 3486(k)(2) (repealed eff. June 1, 2020).   To exhaust administrative remedies under the current regulations, the inmate must complete the review process by appealing the first level decision to the Office of Appeals, and receiving a decision of "denied," "granted," "no jurisdiction," "identified as staff misconduct," "pending legal matter," or "time expired" in accordance with 15 Cal. Code Regs. § 3485 (g)(1)-(g)(3), (g)(8)-(g)(10).  15 Cal. Code Regs. § 3485(1)(1).  Administrative remedies are not exhausted where the review process results in the Office of Appeals issuing the following decisions: "redirect," "reassign," "reject" or "disallowed," as defined in 15 Cal. Code Regs. § 3845(g)(4)-(g)(7).  15 Cal. Code Regs. § 3485(l)(2).

In *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014), the Ninth Circuit reviewed the district court's 2008 ruling that plaintiff had failed to exhaust available administrative remedies as to an officer not linked to wrongdoing in plaintiff's grievance

and noted that neither the PLRA itself nor California regulations required an inmate to name the responsible parties who may ultimately be sued. *See id.* at 839 (claim properly exhausted where inmate described nature of the wrong and identified defendant as a responding officer). But as of January 28, 2011, California regulations require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3) (repealed June 1, 2020); *see also* Cal. Code Regs. tit. 15, § 3084.2(c)(2) (effective June 1, 2020) (grievance shall "describe all information known and available to the claimant regarding the claim, including … names and titles of all involved staff members (or a description of those staff members)").

If an inmate's grievance does not comply with a procedural rule but prison officials decide it on the merits anyway at all available levels of administrative review, it is exhausted. *Reyes v. Smith*, 810 F.3d 654, 656, 658 (9th Cir. 2016) (plaintiff's claim exhausted as to prison doctors named in federal action where grievance plainly put prison officials on notice of the nature of the wrong alleged in federal action – denial of pain medication by defendant doctors – and prison officials easily identified the named prison doctors' involvement in the issue). Thus, a California inmate whose grievance failed to name all staff members involved in his case, as required by former 15 Cal. Code Regs. § 3084.2(a)(3) (repealed eff. June 1, 2020), nevertheless exhausted his claim of deliberate indifference to his serious medical needs because that claim was decided on its merits at all levels of review. *See id.* at 656-57.

Defendants assert that Plaintiff failed to exhaust administrative remedies against Defendant Guijarro because the grievance failed to identify him. Dkt. No. 21 at 10. Defendants assert Plaintiff filed a single grievance (Log No. 270800) regarding the June 19, 2022 use of force incident, and only identified Defendants Serrato, Akins and Diaz therein. *Id.* Defendants assert, therefore, that the grievance did not put the institution or CDCR on notice that Defendant Guijarro was the subject of any claim. *Id.* Defendants assert that Plaintiff's claims against Defendant Guijarro are thus barred under the PLRA.

20

*Id.*

In opposition, Plaintiff asserts he filed two grievances on the same day which were both assigned Log No. 270800. Dkt. No. 32 at 2, 7-10. Plaintiff admits that he did not name Defendant Guijarro in the grievance, but that it was only after he received a copy of the rule violation report that he became aware that Defendant Guijarro was involved in the incident. *Id.* at 2. He asserts that he intended to supplement his grievance to include Defendant Guijarro when he was interviewed regarding it but that interview never took place. *Id.* Plaintiff asserts that he had no pre-knowledge that Defendant Guijarro was one of the officers involved. *Id.* at 3. He asserts that under *Reyes v. Smith*, 819 F.3d 654, the grievance was adequate to alert the prison officials to the nature of the alleged wrong and in addition, all the staff involved in the matter. *Id.* at 4. Plaintiff asserts that Defendant Guijarro also wrote a report which was included in the incident packet, which should suffice to provide information to identify un-named individuals. *Id.* at 5.

In reply, Defendants assert that Plaintiff could have filed a separate grievance against Defendant Guijarro or sought to add him to his existing claim, but instead he filed a second-level appeal. Dkt. No. 45 at 3. The second level rejected the attempt. *Id.*, citing Dkt. No. 32 at 13. Defendants also assert that Plaintiff could have appealed the rejection but did not. *Id.* Because a rejection does not exhaust administrative remedies, Plaintiff did not exhaust his claims against Defendant Guijarro. *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there exists no genuine dispute of material facts regarding the failure to exhaust Plaintiff's claims against Defendant Guijarro. Plaintiff admits that he did not specifically identify Defendant Guijarro in his grievance. However, the Court agrees that there was sufficient information in the grievance to put prison officials on notice of the nature of the wrong alleged, i.e., excessive force by officers. In his first grievance paper, Plaintiff describes Defendant Serrato spraying him with pepper spray. Dkt. No. 32 at 8. Then he claims Defendants Akins and Diaz entered the cell, threw him out of his wheelchair, and then

United States District Court
Northern District of California

kicked and shoved him.  *Id.*  In the second grievance paper, Plaintiff describes Defendant Serrato and Akins spraying him, and then later "*someone* kicking him in the side rib area." *Id.* at 10 (emphasis added).  Based on these allegations, prison officials would have been able to confirm through an investigation that Defendant Diaz was not the one who entered the cell, but rather Defendant Guijarro.  They would have also had reason to investigate Plaintiff's allegation that "someone" had kicked him in the side.

However, Plaintiff still failed to exhaust claims against Defendant Guijarro because there is no indication that Log No. 270800 was decided on the merits at all available levels of administrative review as in *Reyes*, such that the matter could be considered exhausted. Plaintiff admits that he *intended* to supplement the claim at an interview which never happened.  Rather than file a separate grievance, he decided to add his claim against Defendant Guijarro in the appeal of the pending grievance.  However, that attempt resulted in the matter being "Rejected" by the Office of Appeals.  Dkt. No. 45-2 at 16.  Under the regulations, a decision from the Office of Appeals to "reject" a claim does not constitute exhaustion of all administrative remedies.  15 Cal. Code Regs. § 3485(l)(2).  Plaintiff does not assert that generally available administrative remedies were effectively not available to him.  Accordingly, there is nothing to indicate that Plaintiff could not have filed a separate grievance against Defendant Guijarro or grieved the rejection of this appeal.

Lastly, Plaintiff asserts that the matter was issued to an "outside agency" which effectively decided the case on the merits and exhausted his administratively remedies. Dkt. No. 32 at 4.  However, the Court notes that nothing in the accompanying exhibits support this assertion, and the only appeals decision which mentions a matter being referred "outside" and exhausting the claim is an unrelated grievance, Log No. 227186.  *Id.* at 14.  Moreover, this grievance decision is dated March 3, 2022, which was over three months before the use of force incident on June 19, 2022.  Accordingly, this assertion is not supported by any relevant documents.

Based on the foregoing, the Court finds there exists no genuine issue as to any

material fact regarding Plaintiff's failure to exhaust available administrative remedies regarding his claims against Defendant Guijarro.  Plaintiff fails to show in opposition that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  Accordingly, Defendant Guijarro is entitled to summary judgment under Rule 56 based on Plaintiff's failure to exhaust administrative remedies with respect to the claims against him.  *See McKinney*, 311 F.3d at 1199.

**III**.   <u>**Referring Case to Settlement Proceedings**</u>

The Court has established a Pro Se Prisoner Settlement Program under which certain prisoner civil rights cases may be referred to a neutral Magistrate Judge for settlement.  In light of the existence of triable issues of fact as to whether Defendants Serrato, Akins, and Diaz violated Plaintiff's rights under the Eighth Amendment, the Court finds the instant matter suitable for settlement proceedings.  Accordingly, the instant action will be referred to a neutral Magistrate Judge for mediation under the Pro Se Prisoner Settlement Program.

**CONCLUSION**

For the reasons stated above, the Court orders as follows:

1.      Defendants Officers J. Serrato, E, Guijarro, B. Akins, and C. Diaz's motion for summary judgment is **GRANTED in part and DENIED in part**.  Dkt. No. 21.

Defendants' motion is **GRANTED** with respect to the claims against Defendant Guijarro based on Plaintiff's failure to exhaust administrative remedies.  Accordingly, the claims against Defendant Guijarro are **DISMISSED** without prejudice for failure to exhaust administrative remedies.  Defendant Guijarro shall be terminated from this action as no claims remain against him.

Defendants' motion is **DENIED** on the merits with regard to the excessive force claim and conspiracy to commit assault claim against Defendants Serrato, Akins, and Diaz.

2.      The instant case is **REFERRED** to Judge Robert M. Illman pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claim in this action against Defendants as described above.  The proceedings shall take place **within ninety (90) days** of the filing date of this order.  Judge Illman shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within ten (10) days after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.

3.      Other than the settlement proceedings ordered herein, and any matters Magistrate Judge Illman deems necessary to conduct such proceedings, this action is hereby **STAYED** until further order by the court following the resolution of the settlement proceedings.

4.      The Clerk shall send a copy of this order to Magistrate Judge Illman in Eureka, California.

5.      Plaintiff's motion for leave to file a sur-reply is GRANTED in part.  Dkt. No. 47.

This order terminates Docket Nos. 21 and 47.

**IT IS SO ORDERED.**

**Dated:  __September 5, 2024____**

BETH LABSON FREEMAN
United States District Judge

Order Granting/Denying In Part MSJ; Refer Illman
PRO-SE\BLF\CR.22\05832Washington_grant/deny-msj&refer.Illman